UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                  :

       - v. -                              :      S4 07 Cr. 3 (BSJ)

HISAN LEE,                                 :
HIBAH LEE,
DELROY LEE,                                :
SELBOURNE WAITE,
LEVAR GAYLE,                               :
ANDRE DAVIDSON, and
ROBERT MORRISON,                           :
               Defendants.
                        :

- - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE

                             PREET BHARARA
                             United States Attorney for
                             The Southern District of New York,
                             Attorney for the United States
                                   of America

Michael Q. English
Margaret Garnett
Todd Blanche
Assistant United States Attorneys
      - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                          :

       - v. -                                    :    S4 07 Cr. 3 (BSJ)

HISAN LEE,                                         :
HIBAH LEE,
DELROY LEE,                                        :
SELBOURNE WAITE,
LEVAR GAYLE,                                       :
ANDRE DAVIDSON, and
ROBERT MORRISON,                                   :
              Defendants.
                                                  :

- - - - - - - - - - - - - - - - - - - - - x

GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTIONS IN LIMINE

The Government submits this memorandum of law in opposition to the defendants' pre-trial motions in the above-referenced case. The defendants' motions fall into the following categories:

- Hisan Lee seeks: (1) the suppression of certain evidence, including physical evidence seized on or about August 29, 2000, from a vehicle located in Amherst County, Virginia; physical evidence seized on or about April 12, 2007, from a residence located at 1173 Fultan Avenue, Bronx, New York; physical evidence seized on or about April 11, 2007, from a residence located at 640 East 176th Street, Bronx, New York; (2) severance from his co-defendant Levar Gayle; (3)

disclosure of any evidence the Government seeks to offer pursuant to Federal Rule of Evidence 404(b); (4) production of *Brady*, *Giglio*, and "3500" material; (5) Rule 16 discovery; and (6) an *in camera* inspection of the grand jury minutes by the Court to insure the integrity of the proceedings.

- Hibah Lee seeks: (1) a bill of particulars; (2) severance from his co-defendant Levar Gayle; (3) a hearing to determine the extent of the Government's misuse of grand jury subpoenas; (4) disclosure of any evidence the Government seeks to offer pursuant to Federal Rule of Evidence 404(b); and (5) production of *Brady*, *Giglio*, and "3500" material.

- Delroy Lee seeks severance of Count 35 of Indictment S4 07 Cr. 3 (BSJ) (the "Indictment"), which charges Delroy Lee with being a felon in possession of a firearm.

- Andre Davidson joins in the motion of defendant Hisan Lee to suppress the physical evidence seized during the August 29, 2000 car stop and subsequent arrest in Virginia; and also joins in the motions for immediate disclosure and/or production of any evidence the Government seeks to offer pursuant to Federal Rule of

Evidence 404(b), and production of *Brady*, *Giglio*, and "3500" material.

- Selbourne Waite joins in the motion of defendant Hisan Lee to suppress the physical evidence seized during the August 29, 2000 car stop and subsequent arrest in Virginia; and also joins in the motions for immediate disclosure and/or production of any evidence the Government seeks to offer pursuant to Federal Rule of Evidence 404(b), and production of *Brady*, *Giglio*, and "3500" material.

- Levar Gayle seeks: (1) the suppression of his post-arrest statement; (2) an order precluding the introduction of an audio tape containing a telephone conversation between Levar Gayle, Lloyd Reid, and an unknown third party in which Gayle discusses a drug robbery; (3) disclosure of any evidence the Government seeks to offer pursuant to Federal Rule of Evidence 404(b); (4) additional Rule 16 discovery; and (5) early production of various items including the Government's witness list, co-conspirator statements, and "relevant information" concerning all informants and cooperating witnesses.

- Robert Morrison has not submitted any additional pre-trial motions.

-3-

For the following reasons, the defendants' motions should be denied *in toto* without a hearing.

## PROCEDURAL HISTORY

On April 4, 2007, a Grand Jury sitting in the Southern District of New York returned a four-count indictment charging 21 co-defendants with conspiracy to distribute crack cocaine, cocaine, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). *See United States v. Saunders et al.*, S2 07 Cr. 3 (BSJ).

On July 18, 2007, a Grand Jury returned a Superseding Indictment against these defendants. *See United States v. Saunders et al.*, S3 07 Cr. 3 (BSJ). On February 21, 2008, a Grand Jury returned another Superseding Indictment charging all of the defendants named herein (except for Levar Gayle) with participating in a racketeering enterprise, known as the DeKalb Avenue Crew, that perpetrated dozens of armed home invasion robberies, primarily in the Bronx, from the mid-1990s through April 2007, and sold narcotics, primarily on DeKalb Avenue in the Bronx. *See United States v. Saunders et al.*, S4 07 Cr. 3 (BSJ) (the "RICO Indictment"). On May 14, 2008, prior to the filing of any motions, the Government agreed to sever the ten defendants charged with racketeering crimes and/or murder (collectively, the "RICO Defendants"), from the trial of the defendants charged only with narcotics and firearms charges. For the sake of convenience

-4-

at pre-trial conferences, however, the case was broken down into three sub-groups: (1) the six defendants charged with murder (Hisan Lee, Hibah Lee, Delroy Lee, Selbourne Waite, Andre Davidson, and Levar Gayle); (2) the four defendants charged with racketeering offenses but not with murder (Morrison, Bobby Saunders, Bobby Moore, Jr., and Tyrone Moore); and (3) the defendants charged with narcotics and firearms charges only.

Trial is scheduled to begin January 19, 2009.

### ARGUMENT

I.  **The Various Motions Seeking Immediate Production of Rule 404(b) Evidence, and Early Production of *Brady*, *Giglio*, and 3500 Material Should Be Denied Because The Court Has Already Set a Schedule For the Disclosure of RICO Enterprise Proof, 404(b) Evidence, and the Production of 3500 Material**

On November 25, 2009, counsel for Andre Davidson submitted a letter on behalf of all defendants seeking a pre-trial conference with the Court to compel the Government to produce all 404(b), *Giglio*, and *Brady* materials no later than December 24, 2009. The Government opposed the defendants' requests. The Government informed the Court that it intended to file a RICO enterprise letter that will inform the Court and defense counsel of the Government's intention to offer evidence of crimes committed by the defendants and their co-racketeers and co-conspirators at least two weeks prior to the commencement of trial. Regarding the production of *Giglio* material, the Government agreed to provide that material on a rolling basis

-5-

starting ten days prior to trial.  By Order dated December 15, 2009, the Court denied the defendants' requests for early production of *Giglio* material, and adopted the schedule proposed by the Government, as described above.  (A Copy of the December 15, 2009 Order is attached as Exhibit A).  Therefore, to the extent the defendants seek early production of 3500 material and 404(b)/RICO Enterprise notice in the pending motions, those motions should be denied as moot because the Court has already ruled on this motion.[1]

## II.  The Motions to Suppress Evidence From the Three Searches Should Be Denied Without A Hearing

### A.  The Search Warrants Issued for the Honda Accord in Virginia and the Premises at 640 East 176th Street Were Proper

#### 1.  Relevant Facts

##### a.  The Virginia Search

On August 29, 2000, approximately ten individuals, including defendants Hisan Lee, Delroy Lee, Selbourne Waite, and Andre Davidson, were arrested following a traffic accident in

---

[1] Gayle also moves for early production of items such as the Government's witness list, all co-conspirator statements, and "relevant information" concerning all informants and cooperating witnesses.  Excluding the Government's witness list, which the Government will not provide to the defendants, much of the information requested by Gayle is encompassed in materials the Government typically provides as part of its "3500 Material" production; to the extent it is in the Government's possession, this information will be provided on a rolling basis, starting ten days before trial commences in this case, as Ordered by the Court in its December 15, 2009 Order.

Amherst County, Virginia. (*See* Exhibits B and C, copies of the August 29, 2000 search warrant affidavits for the Honda and Infiniti). Three vehicles, including a 2001 Nissan Maxima (the "Maxima"), a 1994 Honda (the "Honda"), and 1993 Infiniti (the "Infiniti"), were observed by an eyewitness traveling in Amherst County, Virginia. The Maxima was involved in an accident with a tractor-trailer near the intersection of Route 29 and Route 151. (Ex. C, ¶ 4). After the accident, the occupants of the Maxima removed several bags from the Maxima and placed the bags in the Honda. (Ex. C, ¶ 4). All of the occupants of the Maxima then entered the other two vehicles (the Honda and the Infiniti), and fled the scene of the accident, abandoning the Maxima. (Ex. C, ¶ 4). When Amherst County law enforcement officers learned about the accident, the transfer of the bags from the Maxima to the Honda, and that the occupants of the Maxima had fled the scene of the accident, officers stopped both the Honda and the Infiniti. A qualified narcotics-sniffing dog was called to the scene of the car stop, and the dog "alerted" to the presence of narcotics in both the Honda and the Infiniti. Thereafter, Magistrate Judge Homer G. Ponton of Amherst County Circuit Court authorized a search of the Honda and the Infiniti, and a quantity of "crack" and powder cocaine was discovered inside of the Honda.

### b.    The Search of 640 East 176th Street, Apartment 3, Bronx, New York

On April 6, 2007, two days after the initial indictment was issued in this case, Magistrate Judge Douglas Eaton authorized searches of four apartments in the Bronx, including the premises of 640 East 176th Street, Apartment 3, Bronx, New York ("Apartment 3"). The application for the warrant was supported by an affidavit that described, *inter alia,* the location to be searched, as well as the basis for the agent's belief that evidence relating to the charged narcotics conspiracy was located inside of Apartment 3. (*See* Ex. B of Hisan Lee's Motion).

### 2.    Applicable Law

In considering a request for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois* v. *Gates*, 462 U.S. 213, 238 (1983). Such determinations must be approached in a practical way, *id.* at 232, because "probable cause is a flexible, common-sense standard." *Texas* v. *Brown*, 460 U.S. 730, 742 (1983). The evidence presented to the magistrate judge, therefore, "'must be seen and weighed not in terms of library analysis by scholars, but as understood

-8-

by those versed in the field of law enforcement.'" *Illinois* v. *Gates*, 462 U.S. at 232. *See also United States* v. *Irving*, 452 F.3d 110, 125 (2d Cir. 2006); *United States* v. *Smith*, 9 F.3d 1007, 1011 (2d Cir. 1993); *United States* v. *Martino*, 664 F.2d 860, 867 (2d Cir. 1981). A magistrate judge's determination of probable cause is accorded "great deference," *Gates*, 462 U.S. at 236, with any doubt about the existence of probable cause being resolved in favor of upholding the warrant. *See United States* v. *Smith*, 9 F.3d at 1012 (quoting *Illinois* v. *Gates* for the proposition that "'after-the-fact scrutiny of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review'"); *Orneles* v. *United States*, 517 U.S. 690, 699 (1996) (recognizing that "police are more likely to use the warrant process if the scrutiny applied to a magistrate's probable cause determination to issue a warrant is less than that for warrantless searches").

Moreover, a positive indication by a trained narcotics-detection canine to a vehicle establishes probable cause to believe the vehicle contains a controlled substance. *See United States* v. *Glover*, 957 F.2d 1004, 1013 (2d Cir. 1992) ("Once the narcotics dog 'hit on' [the defendant's] bags, the police had probable cause to obtain a search warrant.").

## 2.    Discussion

The motions to suppress the evidence recovered from the Honda and the evidence recovered from Apartment 3 should be denied without a hearing.  As the case law makes clear, the standard for whether a warrant should issue is whether "fair probability" exists "that contraband or evidence of a crime will be found in a particular place."  *Illinois* v. *Gates*, 462 U.S. at 238.  Here, there can be no real dispute that probable cause existed to search the Honda.  The respective affidavits by Amherst County officers described the car accident involving the Maxima, the transfer of multiple bags from the Maxima to the Honda, and the flight of the occupants of the Maxima in the Honda and Infiniti.  In addition to this suspicious conduct, a narcotics dog "hit on" the Honda, which in and of itself gave probable cause for a warrant to issue.  *See Glover*, 957 F.2d at 1013.  Together, this evidence provided more than a reasonable basis to believe that the Honda contained narcotics or narcotics paraphernalia.  Accordingly, as Magistrate Judge Ponton correctly determined, the application established probable cause for the issuance of a warrant to search the Honda.  Finally, the warrant was specific and not over-broad: the warrant affidavit specifically set forth the items to be searched for, including controlled substances and items used in the packaging and transportation of controlled substances.

Likewise, the affidavit in support of the search warrant for Apartment 3 established probable cause to believe that narcotics-related documents or paraphernalia would be found in Apartment 3. Hisan Lee complains about the "general" nature of the affidavit, but a careful reading of the affidavit reveals little support for this claim. In his affidavit, Special Agent Michael Zeppieri of the ATF provided a detailed description of the investigation, as well as information about why he believed that narcotics-related evidence would be found inside Apartment 3, including his experience investigating narcotics conspiracies such as the DeKalb Avenue Crew's. There is, of course, nothing improper about an agent relying on his experience when informing the magistrate judge that drug dealers often keep evidence of their drug dealing in their homes. *United States* v. *Smith*, 9 F.3d at 1012. The evidence tying Hisan Lee to Apartment 3 was laid out in detail by Special Agent Zeppieri, and included multiple sightings of Hisan Lee's BMW in the area, as well as a police report and Con Edison bills tying Hisan Lee's friend, Suzette Rose, to Apartment 3. Based upon this detailed information in the affidavit, Magistrate Judge Eaton did not err in finding that the affidavit established probable cause to believe that Apartment 3 contained evidence of narcotics crimes. Hence, Hisan Lee's motions to suppress should be denied.

-11-

B.    The Search of 1173 Fulton Avenue Was Proper

   1.    Relevant Facts

On or about April 12, 2007, law enforcement officers went to an apartment building located at 1173 Fulton Avenue, Bronx, New York (the "Building") to arrest Hisan Lee and Robert Morrison.  (Ex. D, affidavit of Special Agent Michael Zeppieri). While Agent Zeppieri was in a hallway area near the stairwell of the Building, he observed Robert Morrison climbing a ladder to the roof of the Building. (Ex. D, ¶ 3).  Agent Zeppieri saw Hisan Lee below Morrison. (Ex. D, ¶ 3).   Thereafter, Lee and Morrison were placed under arrest.

Prior to arresting Hisan Lee and Robert Morrison, Agent Zeppieri had learned from law enforcement officers who were stationed outside of the Building that officers had observed a window in the Building (connected to Apartment 4B) being broken in what appeared to be an effort by someone to escape.   (Ex. D, ¶ 4).  Thereafter, Agent Zeppieri interviewed the resident ("Witness") of 1173 Fulton Avenue, Apartment 4B, Bronx, New York ("Apartment 4B").  During the course of that interview, Agent Zeppieri learned that: (1) the Witness was the resident of Apartment 4B; (2) the Witness is related to both Robert Morrison and Hisan Lee; (3) earlier in the morning of April 12, 2007, Morrison and Lee came to Apartment 4B and asked the Witness whether they could stay in Apartment 4B for a short time; (4) the

Witness allowed them to sleep in the back bedroom; (5) Lee and Morrison brought a small bag with them when they came into Apartment 4B. (Ex. D, ¶ 5).

During the interview of the Witness, she consented to a search of Apartment 4B. (Ex. D, ¶ 6). During the subsequent search, Agent Zeppieri recovered several items that were strewn across the bed of the back bedroom. Agent Zeppieri also observed that the window of the back bedroom was broken. (Ex. D, ¶ 7).

### 2.    Applicable Law

The Fourth Amendment "prohibits only unreasonable searches and seizures." *United States* v. *Blue*, 78 F.3d 56, 59 (2d Cir. 1996). In determining the reasonableness of a given search, a court must "balance[] the intrusion on an individual's Fourth Amendment interests against the legitimate government interest in conducting the search under the circumstances." *Id.* While a warrant is generally required before the police may reasonably enter a home without consent, *see United States* v. *Gori*, 230 F.3d 44, 50 (2d Cir. 2000), it is lawful for the police to enter a home with the voluntary consent of the person who lives there. *United States* v. *Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993). Consent need not be expressed in a particular form, but "can be found from an individual's words, acts or conduct." *Id.* Moreover, once lawfully inside a home, "the Fourth Amendment's protection of the home is not abrogated so long as

-13-

the officer's conduct was reasonable under the circumstances."
*United States* v. *Gori*, 230 F.3d at 54.

With consent, officers may go into any location to
which the consent extends. *See Schneckloth* v. *Bustamonte*, 412
U.S. 218, 219 (1973); *United States* v. *Sanchez*, 635 F.2d 47, 58
(2d Cir. 1980). The "standard for measuring the scope of a
suspect's consent under the Fourth Amendment is that of
'objective' reasonableness — what would the typical reasonable
person have understood by the exchange between the officer and
the suspect?" *Florida* v. *Jimeno*, 500 U.S. at 251; *see also*
*United States* v. *Elliott*, 50 F.3d 180, 186 (2d Cir. 1995) (even
if search exceeded scope of the consent given, "an officer's
objectively reasonable belief that the search was within the
scope of that consent is sufficient to validate the search"). To
determine whether the objective reasonableness standard has been
met, courts consider "the totality of all the circumstances."
*United States* v. *Sanchez*, 635 F.2d at 58 (internal quotations
omitted).

Equally well-settled is that police officers, when
lawfully in a particular location within a home, may seize
evidence found in plain view. *See Horton* v. *California*, 496 U.S.
128, 133, 135-36 (1990). A warrantless seizure is justified
under the plain view doctrine if the officer has a legal right to
be in the place from where he sees the object subject to seizure

-14-

and a "lawful right of access to the object itself," and if the object's incriminating nature is "immediately apparent." *Id*. at 136-37; *see also Gori*, 230 F.3d at 50 (warrant not required to seize "an item in plain view if there is cause to believe that it is evidence of crime"); *United States* v. *Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (noting exception to warrant requirement satisfied where butt of firearm was in plain view).

In applying these rules, the Court should keep in mind that exclusionary rules exist "as a principal mode of discouraging lawless police conduct." *Terry* v. *Ohio*, 392 U.S. 1, 12 (1968). The Court ought not, therefore, apply these rules in a manner that bars reasonable, common-sense conduct by law enforcement officers. *See United States* v. *Leon*, 468 U.S. 897, 918-19 (1984) (exclusionary rule should not be applied to deter objectively reasonable law enforcement activity).

On a suppression motion challenging a consent search, the Government bears the burden of proving by a preponderance of the evidence that consent was voluntarily given. *See United States* v. *Male Juvenile*, 121 F.3d 34 (2d Cir. 1997); *United States* v. *Deutsch*, 987 F.2d at 883.

C. **Discussion**

Here, because the resident of the apartment consented to its search, there was nothing improper about the subsequent search and the motion to suppress the evidence taken during the

-15-

search should be denied.  For his part, Hisan Lee does not submit any facts which warrant a hearing.  He merely states that "no one consented to enter the apartment or search inside of it."  (Hisan Lee Br. Ex. A at 2).  Hisan Lee did not know, apparently, that consent was given by the resident of Apartment 4B.  (*See* Ex. D).  Because objectively valid consent was indeed given, there was nothing improper about the search of Apartment 4B and the motion to suppress the items found there should be denied without a hearing.  *Schneckloth* v. *Bustamonte*, 412 U.S. at 219; *United States* v. *Sanchez*, 635 F.2d at 58.

### III. The Motion to Suppress Levar Gayle's Post Arrest Statement Should Be Denied Without a Hearing

#### A.    Relevant Facts

On January 31, 2008, defendant Levar Gayle was arrested by federal agents at his job in Manhattan.  Based on his own affidavit and representations in his motion to suppress, Gayle was advised of his *Miranda* rights orally at the time of his arrest. (Gayle Br. 1, Gayle Decl. ¶ 4).  When the agents brought Gayle to their offices, he was advised of those rights again, and he signed a form listing each of those rights and indicating that he had been told of those rights and understood them; in his motion, Gayle now claims that he did not read this form before signing it. (Gayle Br. 2, Gayle Decl. ¶ 7).  Gayle then agreed to speak with law enforcement agents and answer their questions about the murder of Oneil Johnson, eventually providing a written

-16-

statement regarding what occurred on the night that Johnson was murdered, including various corrections to that statement, which he initialed "LG". (Gayle's written *Miranda* waiver and handwritten statement, as well as the agent's notes concerning the statement, are attached hereto as Exhibit E).

Gayle now seeks to suppress his post-arrest statements, claiming that he did not understand his rights or what he was doing when he answered the agents' questions, and further claiming that his written statement was a mix of his own recollections and things that the agents had told him were true. (Gayle Br. 2). Gayle claims that he did these things in part because he believed that, if he answered the agents' questions "properly," he would be permitted to go home to watch the Super Bowl two days later, and because he did not understand that his statements could be used against him or that he had a choice to decline to speak to the agents. (Gayle Br. 2, Gayle Decl. ¶¶ 13-14). Apart from these allegations, Gayle does not claim that agents used any physical force, threats, or other type of coercion at any time. For the reasons set forth below, even if Gayle's allegations regarding his confession are accepted *arguendo* as true -- which they are not -- they do not warrant suppression as a matter of law and thus, Gayle's motion should be denied without a hearing.

-17-

### B.    Applicable Law

A confession is "involuntary" within the meaning of the Fifth Amendment if it is obtained through "'techniques and methods offensive to due process' or under circumstances in which the suspect lacked an opportunity to exercise 'a free and unconstrained will'." *Oregon v. Elstad*, 470 U.S. 298, 304 (1985) (quoting *Haynes v. Washington*, 373 U.S. 503, 515 (1963)).  In determining whether a confession is the product of coercion, courts must consider "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991); *United States v. Bye*, 919 F.2d 6, 8-9 (2d Cir. 1990) (test is whether waiver was "product of an essentially free and unconstrained choice," and reviewing court must consider the totality of the surrounding circumstances).

The Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'" within the meaning of the Due Process Clause. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (confession motivated by defendant's psychosis admissible where not causally related to police coercion).  Because "[t]he purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution,"

-18-

*Connelly*, 479 U.S. at 166, suppression is improper where law enforcement did not use coercive tactics.  *Id*. at 168.  Absent evidence of such governmental coercion, therefore, no hearing is required on a motion to suppress a confession.  *United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998).

The Second Circuit has repeatedly held that statements by law enforcement regarding the benefits of cooperation and vague promises of leniency do not constitute coercion and do not nullify a *Miranda* waiver.  *See United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002) (vague promises of leniency are just one factor to be considered but do not, without more, amount to coercion); *United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995) ("statements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive").

Moreover, "'[a] diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective.'"  *Salameh*, 152 F.3d at 117 (quoting *United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992)); *see also United States v. Yousef*, 327 F.3d 56, 126 (2d Cir. 2003) (confession voluntary where circumstances of questioning not unduly coercive).  Thus, absent any coercion, the defendant's state of mind is irrelevant.  *Connelly*, 479 U.S. at 165, 167 ("mere examination of the confessant's state of mind can never conclude the due process inquiry . . . coercive police

-19-

activity is a necessary predicate to the finding that a confession is not 'voluntary'"); *Salameh*, 152 F.3d at 117 ("one's mental state does not become part of the calculus for the suppression of evidence unless there is an allegation that agents of the United States engaged in some type of coercion").

Waivers of *Miranda* rights must also be "knowing and intelligent," which also requires a "totality of the circumstances" evaluation, and a conclusion, by a preponderance of the evidence, that a defendant understood the nature of the rights being abandoned and the consequences of his decision to abandon them.  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," but does require that a suspect know the core of his Fifth Amendment rights: "that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time."  *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

### C.    Discussion

#### 1.    The Alleged Arrest Conduct Was Not Coercive

The circumstances surrounding Gayle's arrest were nothing short of routine.  Gayle asserts that he was informed by his fiancé that federal agents were at their home with a warrant for his arrest, that he asked the agents if he could meet them at

his house and was told that he should wait at his workplace for the agents to arrive there.  When the agents arrived, he was orally advised of his *Miranda* rights, handcuffed, and placed under arrest.  Gayle was then transported to a federal office in Brooklyn for processing and further questioning, where he was provided with a written copy of his *Miranda* rights, which he signed.  Gayle does not allege any misconduct on the part of the agents during the arrest or transport process.

### 2.    The Agents' Alleged Statements During Gayle's Post-Arrest Interview Were Not Coercive

Similarly, Gayle's allegations regarding the actual interview by law enforcement agents do not warrant suppression. Gayle contends that the interrogating agents told him that if he gave the "right answers" to their questions, he could go home in time to watch the Super Bowl, which was airing two days later. (Gayle Decl. ¶ 9).  Gayle also contends that when he told the agents that he did not remember certain things about the night of the Oneil Johnson murder, the agents called him a liar.  (Gayle Decl. ¶ 11).  Similarly, Gayle contends that when he told the agents things about the Oneil Johnson murder that they did not believe, they again called him a liar and then told him what they believed had in fact occurred.  (Gayle Decl. ¶ 12).

Even if they were true, these kind of blanket statements made by a police officer to a detained suspect about the evidence against him and vague promises of leniency are

-21-

clearly insufficient to invalidate a confession or rise to the level of psychological coercion required to demonstrate that a "[d]efendant's will was overborne by the agent's conduct." *Anderson*, 929 U.S. at 99.  Indeed, the suggestion that Gayle would be permitted to go home in time for the Super Bowl, even assuming that such a statement was made, barely rises to the level of a promise of leniency in exchange for cooperation, much less the sort of promise that could render a statement involuntary.  *See Gaines*, 295 F.3d at 299 ("vague promises of leniency for cooperation are just one factor . . . and generally will not, without more, warrant a finding of coercion"); *Ruggles*, 70 F.3d at 265 ("'a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials'") (quoting *Bye*, 919 F.2d at 9); *see also United States v. Joel Spiegelman*, 05 Cr. 960 (SAS) (denying defendant's motion to suppress statements based on assertion that, as a practicing Jew, the agent's promise that defendant could go home in time for Rosh Hashanah was particularly coercive); *United States v. Berkowich*, 932 F. Supp. 582, 587 (S.D.N.Y. 1996) (finding that defendant's statements "[w]ere made knowingly and voluntarily, and were not the product of coercion" where defendant claimed that agents said that they would "help him and even possibly release him" if he cooperated), *aff'd*, 168 F.3d 64, 67 (2d Cir. 1999).

Absent actual coercive tactics by law enforcement agents, Gayle's personal characteristics or state of mind are irrelevant because they cannot render his inculpatory statements involuntary. *Connelly*, 479 U.S. at 167. Indeed, in *Connelly*, the defendant suffered from "chronic schizophrenia" and confessed because he was "following the 'voice of God.'" *Id*. at 161. The Supreme Court concluded that "a defendant's mental condition, by itself and apart from its relation to official coercion," could not support a finding of involuntariness. *Id*. at 164. In reaching this conclusion, the Court noted that "if we were to establish a brand new constitutional right—the right of a criminal defendant to confess to his crime only when totally rational and properly motivated—could respondent's present claim be sustained." *Id*. at 166 (citation omitted).

Applying these principles, the Second Circuit has found no basis for a suppression hearing absent allegations of government coercion, even if torture and incarceration had weakened a defendant's mental state, noting that "[a] diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." *Salameh*, 152 F.3d at 117 (quoting *Chrismon*, 965 F.2d at 1469). In *Salameh*, the Second Circuit affirmed the District Court's finding that a hearing was unnecessary where the defendant did not allege any coercion by a United States agent, despite

-23-

defendant's diminished mental state after prolonged incarceration and torture in Egypt.  152 F.3d at 117.

Here, Gayle does not claim that there was any form of coercion during his post-arrest interview apart from the assertion that he would be able to return home in time to watch a sporting event on television two days later, and that the agents told Gayle that they thought he was lying when he said things that the agents did not believe were true.  (Gayle Decl. ¶¶ 9, 11-12).  Gayle does not allege that any physical force or threats were used at any time, or that agents made verbal threats to him or his family members or fabricated evidence against him.  Gayle claims that his statement was the product of his confusion about his ability to decline to answer questions or write out a statement, although he acknowledges that he was clearly advised by the agents at the time of his arrest that he could remain silent and that he had the right to have an attorney present when he was questioned, and that he was provided with a written version of these rights, which he now alleges he chose to sign without reading.[2]  (Gayle Decl. ¶¶ 4, 7, 13).

---

[2] Other aspects of Gayle's own version of events support a finding that Gayle understood what was happening to him, including his discussion with his fiancé and the agents about the warrant and where the arrest would take place, his consent to a search of his car and signing of a written consent form, his own recollection of what specific rights were explained to him, and his written statement itself, with his own initialed corrections. (See Gayle Decl.; Exhibit E).

-24-

However, absent any coercion, these allegations as to Gayle's subjective state of mind are insufficient to suppress his statements as a matter of law. *See Connelly*, 479 U.S. at 165-66; *Salameh*, 152 F.3d at 117; *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987) (defendant's personal characteristics, including minimal education, and history of alcohol and drug abuse and suicide attempts (indicative of an easily overborne will) are irrelevant absent showing of coercive police activity). *See also Cristobal*, 293 F.3d at 140-41 (waiver not involuntary, despite fact that defendant has been given pain killers and narcotics, because law enforcement officials did not exploit defendant's weakened condition with coercive tactics); *Lawal*, 231 F.3d at 1048-49 (no basis for suppression as a matter of law where no claim of coercion, despite defendant's claims that his unique personal characteristics made it impossible for him to fully understand his rights or the implications of waiving them, including that he was not familiar with American legal system, suffered from paranoia, and came from country where noncompliance with police would have lead to torture).

A defendant's state of mind is relevant to a court's analysis of whether an admission was voluntary *only if* there is an allegation of police coercion, but that is simply not the case here. *Connelly*, 479 U.S. at 167. The case relied on by Gayle in his brief is not to the contrary, and is factually inapposite,

-25-

even given Gayle's version of the events during his questioning by the agents.  *See United States v. Lopez*, 437 F.3d 1059, 1069 (10th Cir. 2006) (Court found that agent's specific promises of leniency, including comparative statements of the specific sentence for cooperators versus non-cooperators; threats regarding the defendant's mother; and specific repeated misstatements and falsifications regarding the evidence against the defendant were improperly coercive).[3]

Gayle's allegations, even if fully credited as true, simply do not support a finding of police coercion under the law. Without such a finding, Gayle's personal characteristics are irrelevant to a determination of the voluntariness of his statements.  Moreover, no further finding is required to determine that Gayle's waiver, following his acknowledgment of being advised of his *Miranda* rights, was likewise voluntary, as it is well established that no more is required for determining whether a *Miranda* waiver was voluntary than is required for a voluntary confession.  *See Connelly*, 479 U.S. at 169-70 ("[t]here is obviously no reason to require more in the way of a 'voluntariness' inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context. The sole concern of the

---

[3] Gayle's brief also relies on a case titled *United States v. Aguilera*, 384 F.3d 530 (8th Cir. 2004), but the Government was not able to locate this case, either by citation, title, or subject matter.

Fifth Amendment, on which *Miranda* was based, is governmental coercion."). Accordingly, Gayle's motion to suppress his post-arrest statements should be dismissed without a hearing.[4]

## IV. The Motion to Sever Levar Gayle From His Co-Defendants Because of His Post Arrest Statement Should Be Denied

### A. Relevant Facts

As discussed above, on January 31, 2008, Gayle waived his *Miranda* rights and provided a post-arrest statement to law enforcement about his involvement, and that of co-defendants Hisan and Hibah Lee, in the murder of Oneil Johnson. (*See* Ex. E).

### B. Applicable Law

Federal Rule of Criminal Procedure 14(a) authorizes a district court to grant a severance "[i]f it appears that a defendant . . . is prejudiced by a joinder." Fed. R. Crim. P. 14(a). For "reasons of economy, convenience and avoidance of delay," however, "there is a preference in the federal system for providing defendants who are indicted together with joint trials." *United States* v. *Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003); *see also United States* v. *Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008); *United States* v. *Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996). This presumption favoring joint trials is

---

[4] Although the Government believes that no hearing is necessary, should the Court determine that a hearing is appropriate, we will be prepared to establish that Gayle's post-arrest statement was knowing and voluntary.

-27-

particularly strong where, as here, "the crime charged involves a common scheme or plan" among all defendants. *United States* v. *Girard*, 601 F.2d 69, 72 (2d Cir. 1979); *accord United States* v. *Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991); *United States* v. *Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988). A defendant seeking severance therefore shoulders the "extremely difficult burden" of showing that he would be so prejudiced by joinder that he would be denied a fair trial. *United States* v. *Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989) (quotation omitted).

In *Bruton*, the Supreme Court held that admission of a non-testifying co-defendant's confession naming the defendant as a perpetrator at their joint trial violates the named defendant's Sixth Amendment right to cross-examination. *See* 391 U.S. at 135-36. In subsequent cases, however, the Supreme Court made clear that non-obvious redaction of a co-defendant's confession to eliminate any references to the defendant is sufficient to eliminate any *Bruton* problem. *See Richardson* v. *Marsh*, 481 U.S. 200 (1987); *Gray* v. *Maryland*, 523 U.S. 185 (1998). If the statement, even after it is redacted, "facially incriminat[es]" the defendant, it is a violation of *Bruton*. *Gray* v. *Maryland*, 523 U.S. at 196.

Applying these principles, the Second Circuit has consistently held that the introduction of a co-defendant's confession with the defendant's name replaced by a neutral noun

-28-

or pronoun does not violate *Bruton*. *See, e.g., United States* v. *Alvarado*, 882 F.2d 645, 651 (2d Cir. 1989), *overruled on other grounds by Bailey* v. *United States*, 516 U.S. 137 (1995); *see also United States* v. *Sanin*, 252 F.3d 79, 84 (2d Cir. 2001) (noting that *Gray* "did not overrule prior decisions or alter doctrines employed by this Circuit"). For example, in *United States* v. *Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989), the Second Circuit affirmed a conviction based in part on a statement of a co-defendant that was redacted to refer to "others," "other people," and "another person." As the Second Circuit explained, "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights." *Id.*

Notably, the Second Circuit has emphasized that, in determining whether a proposed redaction is sufficient to pass muster under *Bruton*, courts should view the redacted statement separate and apart from any other evidence admitted at the trial. In *United States* v. *Williams*, 936 F.2d 698 (2d Cir. 1991), for example, the Second Circuit noted that prior decisions "have uniformly held that the appropriate analysis to be used when applying the *Bruton* rule requires that we view the redacted

-29-

confession in isolation from the other evidence introduced at trial." *Id.* at 700. If that confession, "when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." *Id.* at 700-01.

In *Crawford* v. *Washington*, the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. The Court was careful, however, to limit its holding to "testimonial" hearsay — that is, to "testimonial" statements offered against the defendant to establish the truth of the matter asserted. *See id.* at 59 n.9 ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); *see also Davis* v. *Washington*, 547 U.S. 813, 821 (2006) ("A critical portion of [*Crawford*'s] holding . . . is the phrase 'testimonial statements.'"). As the Court explained, the Confrontation Clause "applies to 'witnesses' against the accused — in other words, those who 'bear testimony.' 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" 541 U.S. at 51 (quoting 2

-30-

Noah Webster, An American Dictionary of the English Language (1828)).

Finally, the Second Circuit has observed that it "rarely overturn[s] the denial of a motion to sever." *United States* v. *Feyrer*, 333 F.3d at 114. Such a denial "will be overturned only if a defendant can show prejudice so severe that his conviction constituted a miscarriage of justice and that the denial of his motion constituted an abuse of discretion." *United States* v. *Yousef*, 327 F.3d 56, 150 (2d Cir. 2003) (internal quotation marks omitted).

## C.  Discussion

Applying these standards, Hisan and Hibah Lee's motion to sever defendant Levar Gayle should be denied. Gayle's post-arrest statement, to the extent it implicates Hisan and Hibah Lee, can and will be appropriately redacted, or "*Bruton*-ized," prior to its proposed admission into evidence. The Government will submit a proposed "*Bruton*-ized" statement two weeks in advance of trial to give counsel for the defendants an opportunity to evaluate the statement. As set forth in decisional law of this Circuit, the appropriate remedy for a co-defendant's post-arrest statement is redaction, and an accompanying limiting instruction if requested by the defense, not severance of that co-defendant. *Williams*, 936 F.2d at 700.

-31-

V.    The Audio Tape During Which Levar Gayle Discuses a Drug Robbery Should Be Admitted Into Evidence

A.    Relevant Facts

Defendant Levar Gayle is charged with participating in a conspiracy to commit Hobbs Act robberies, from in or about 1997 through 2007 (Count Nine); the robbery of Oneil Johnson on July 25, 2003 (Count Eleven); the murder of Oneil Johnson (Count Twenty-Three); and aiding and abetting the discharge of a firearm during the robbery of Oneil Johnson (Count Twenty-Four).

During August 2007, the Drug Enforcement Agency ("DEA") conducted an investigation into marijuana trafficking and Hobbs Act robberies in the Bronx. During the investigation, the DEA obtained a Title III wiretap on the cellular telephone of Lloyd Reid, a/k/a "Kevin." On August 9, 2007, the DEA intercepted a telephone call between Reid, defendant Levar Gayle, and a third party during which Reid and Gayle discussed their recent robbery of a house on 238th Street in the Bronx. (See Ex. F, line-sheet summary of Aug. 9, 2007 conversation). Specifically, Reid and Gayle discussed their search for marijuana during the robbery. During the call, Reid informed Gayle that, despite their efforts, they missed $30,000 that was wrapped in a pillow case in the house. Clearly discussing his efforts to locate the drugs and/or drug proceeds during the robbery, Gayle reminds Reid that "We tore that place up, B, we tore that place up." In January 2009, Reid was convicted of Hobbs Act robbery and marijuana conspiracy

-32-

counts after a trial before the Honorable Robert P. Patterson. On November 23, 2009, Judge Patterson sentenced Reid to 60 months' imprisonment.

## B.    Applicable Law

The at-issue evidence of Gayle's participation in a Hobbs Act robbery of a narcotics dealer is admissible to: (1) complete the story of the crimes charged and fill in the chronology of events that will be described by cooperating witnesses; (2) explain the nature and development of the illegal relationships among the co-conspirators; and (3) explain conduct that is emblematic of violent robbery and narcotics organizations like the one in which Gayle participated. *See United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."); *United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"); *United States v. Rosa*, 11 F.3d 315, 333-34 (2d Cir. 1993) (evidence of prior acts of car theft and drug dealing properly admitted to show development of illegal relationship between defendant and co-conspirator and to explain how defendant came to play

important role in conspiracy); *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (evidence of prior narcotics transactions admissible as relevant background information to explain relationship among alleged co-conspirators); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (evidence of pre-existing drug trafficking relationship between defendant and co-conspirator admissible to aid jury's understanding of how transaction for which defendant was charged came about and his role in it); *see also United States v. Langford*, 990 F.2d 65, 70 (2d Cir. 1993) ("evidence of acts committed prior to the time charged in the indictment [admissible] to prove the existence of the alleged conspiracy"). Evidence of other acts may be admitted to provide the jury with the complete story of the crime charged by demonstrating the context of certain events relevant to the charged offense. *See Inserra*, 34 F.3d at 89. Evidence of uncharged criminal activity is not considered "other crimes" evidence under Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, or if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial." *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (citations omitted) (alterations in original).

-34-

Further, evidence of prior acts is admissible under Rules 404(b) and 403 of the Federal Rules of Evidence if it is (1) advanced for a proper purpose; (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) if requested, admitted subject to a limiting instruction. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). Under the Second Circuit's "inclusionary approach" to the admission of other act evidence, evidence of prior crimes, wrongs or acts is admissible for any purpose other than to show a defendant's criminal propensity. *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996).

## C.    Discussion

Here, the evidence of Gayle's participation in a robbery or marijuana and drug proceeds is admissible as direct evidence of the Hobbs Act robbery conspiracy charged in Count Nine of the Indictment. Gayle asserts that this recorded conversation relates only to the burglary of an unoccupied dwelling, though this generous characterization is not specifically referenced in the conversation by Gayle or Reid. Gayle further claims that this recorded conversation adds "no evidence" to prove the charges against Gayle. (Gayle Br. at 8). Remarkably, Gayle ignores that the robbery of marijuana and drug

proceeds is the core of the robbery conspiracy for which he is charged.  The Government's proof at trial will demonstrate that Gayle and other members of the DeKalb Avenue Crew committed multiple robberies and attempted robberies of marijuana and drug proceeds, including the robbery and murder of Oneil Johnson, with which Gayle is also charged.  Therefore, proof that Gayle entered a dwelling and "tore that place up" is highly probative of Gayle's involvement in the charged Hobbs Act robbery conspiracy.

Moreover, at trial, Government cooperating witnesses will provide testimony connecting Lloyd Reid to the DeKalb Avenue Crew.  For example, a Government cooperating witness is expected to testify that members of the DeKalb Avenue Crew supplied Reid, a Bronx-based marijuana dealer, with firearms.  In sum, the evidence of Gayle's robbery discussions with Reid is highly probative of Gayle's intent to commit Hobbs Act robbery and is direct evidence of Gayle's participation in the charged Hobbs Act robbery conspiracy (Count Nine).  Accordingly, Gayle's motion to preclude this conversation should be denied.

## VI.  The Motion for a Bill of Particulars Should be Denied

### A.  Applicable Law

The sole legitimate purpose of a bill of particulars is to furnish facts that are necessary to apprise a defendant of the charges against him with sufficient precision to (I) enable him to prepare his defense, (ii) avoid unfair surprise at trial, and

(iii) preclude a second prosecution for the same offense.  *See Wong Tai* v. *United States*, 273 U.S. 77, 80-82 (1927); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990); *United States* v. *Salazar*, 485 F.2d 1272, 1278 (2d Cir. 1973).  Indeed, "a bill of particulars should be required only where the charges of an Indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *United States* v. *Torres*, 901 F.2d at 234 *(quoting United States* v. *Feola,* 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987)).  Furthermore, a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.  *See United States* v. *Walsh,* 194 F.3d 37, 47 (2d Cir. 1999) (affirming denial of particulars where Government adequately informed defendant of nature of charges through discovery).

The ultimate test for whether a bill of particulars should be granted is not whether the information sought is merely helpful in preparing for trial, but whether it is necessary for the limited notification purpose of a bill of particulars.  *See United States* v. *Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985); *United States* v. *Leighton*, 265 F. Supp. 27, 35 (S.D.N.Y.), *aff'd*, 386 F.2d 822 (2d Cir. 1967).  The law is equally clear about what a bill of particulars is not.  "Acquisition of evidentiary detail is not the function of the bill of

-37-

particulars." *Torres*, 901 F.2d at 234.; *see United States* v. *Gottlieb*, 493 F.2d 987, 994 (2d Cir. 1974); *United States* v. *Lebron*, 222 F.2d 531, 535-36 (2d Cir. 1955).  Nor is it a general investigative tool for the defense. *United States* v. *Salazar*, 485 F.2d at 1278.  Further, a bill of particulars is not to be used as a vehicle to "compel the disclosure of how much the Government can prove and how much it cannot nor to foreclose the Government from using proof it may develop as the trial approaches." *United States* v. *Malinsky*, 19 F.R.D. 426, 428 (S.D.N.Y. 1956).  Nor is it a vehicle for forcing the Government to disclose its legal theory.  *See United States* v. *Shoher*, 555 F. Supp. 346, 349-51 (S.D.N.Y. 1983); *United States* v. *Coped*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974).

### B.   Discussion

Hibah Lee's motion for a bill of particulars should be summarily denied.  A bill of particulars is not appropriate or necessary where, as here, the 69-page Indictment alleges numerous acts committed by Hibah Lee and his co-defendants in furtherance of their racketeering enterprise, numerous overt acts in furtherance of their narcotics trafficking conspiracy, and several substantive acts – including robbery and possession of firearms – that more then sufficiently inform Hibah Lee and his co-defendants of the charges they face at trial.  *See Torres*, 901

F.2d at 234.  None of the defendants risk being "surprised" at trial to learn what charges they face.

Further, the information requested by Hibah Lee, such as specific dates on which Hibah Lee participated in certain events, or the dates that Hibah Lee and his co-conspirators joined the conspiracy, and whether any co-defendants made statements implicating Hibah Lee, to name a few, is not the type of information a proper bill of particulars would show.  *See United States* v. *Torres*, 901 F.2d at 234.  Indeed, some of this information is of the type that the Government is not even required to prove at trial, much less required to provide the defense with prior to trial in a bill of particulars.  *United States* v. *Shabani*, 513 U.S. 10, 15 (1994).  For example, the Government is not required to prove any particular "overt act" to sustain its burden on the narcotics or robbery conspiracy.  Further, the Government is not required to prove particular dates that members of a conspiracy join it.

Here, Hibah Lee has been informed of the nature of the charges against him in the form of a 69-page Indictment.  Lee has also been provided with thousands of pages of discovery, describing, *inter alia*, some of the acts committed by the RICO enterprise and narcotics and robbery conspiracies of which he was a part. Moreover, two weeks prior to trial the Government will provide the Court and counsel with a detailed RICO enterprise

-39-

letter that will describe many of the specific acts that the Government will prove at trial. For these reasons, Hibah Lee's motion for a bill of particulars should be denied.

## VII. The Motion for an Inspection of Grand Jury Minutes and For a Hearing About Improper Use of Grand Jury Subpoenas Should Be Denied

### A.    Applicable Law

The Supreme Court has made clear that "a challenge to the reliability or competence of the evidence presented to the grand jury will not be heard." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 260-61 (1988); *accord United States v. Williams*, 504 U.S. 36, 54 (1992); *United States v. Casamento*, 887 F.2d, 1141, 1182 (2d Cir. 1989) ("An indictment, if valid on its face, may not be challenged of the grounds that it is based on inadequate evidence"). Moreover, even if a grave error in the grand jury proceedings could be established, the Supreme Court has held that "the petit jury's subsequent guilty verdict means . . . [that] any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *See United States v. Mechanik*, 475 U.S. 66, 72-73 (1986); *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996).

This Court has observed that "[t]here is a tradition in the United States, a tradition that is 'older than our Nation itself,' that proceedings before a grand jury shall generally

-40-

remain secret." *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (quoting *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959)). A defendant may seek disclosure of grand jury materials, but "the burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy." *United States* v. *Moten*, 582 F.2d 654, 662 (2d Cir. 1978).

This principle of grand jury secrecy is codified in Federal Rule of Criminal Procedure 6(e), which, with certain exceptions, instructs most participants in the grand jury process that they "must not disclose a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). The Rule provides, however, that "[t]he court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

A district court adjudicating a motion for the disclosure of grand jury materials is "infused with substantial discretion." *Douglas Oil Co. of Cal.* v. *Petrol Stops Northwest*, 441 U.S. 211, 223 (1979). A district court's order denying a motion to compel disclosure of grand jury transcripts is therefore reviewed only for abuse of discretion. *See, e.g., In*

*re Grand Jury Subpoena*, 72 F.3d 271, 273 (2d Cir. 1995); *see also McAninch* v. *Wintermute*, 491 F.3d 759, 767 (8th Cir. 2007); *Shields* v. *Twiss*, 389 F.3d 142, 149 (5th Cir. 2004); *Matter of Grand Jury Proceedings, Special Sept., 1986*, 942 F.2d 1195, 1198 (7th Cir. 1991).

### B.    Discussion

Here, both motions alleging improper conduct before the grand jury are utterly baseless. Hisan Lee's request for an *in camera* inspection of grand jury minutes based upon one voucher that was produced in discovery (that lists the name "Hisan Lee" as being in possession of ammunition), should be denied without a hearing. An alleged error in a single document does not give rise to the need for the Court to inspect the grand jury minutes.[5] *Douglas Oil Co. of Cal.* v. *Petrol Stops Northwest*, 441 U.S. at 223. Significantly, there is no allegation that this voucher was presented before the grand jury, nor is there any allegation, save assertions that completely speculative, that such a notation had *any* effect whatsoever on the grand jury process. Disclosure of grand jury procedures and minutes is not permitted unless there is "a strong showing of particularized need." *United States* v. *Sells Eng'g, Inc.*, 463 U.S. 418, 443, (1983). There has been no showing of any need for inspection

---

[5] The Government explained the placement of Hisan Lee's name on the voucher at issue to Lee's counsel during a meeting several months ago.

-42-

here.   Hence, Hisan Lee's motion for an *in camera* inspection should be denied.

Second, Hibah Lee boldly asserts that the Government improperly issued grand jury subpoenas to two witnesses in order to assist their trial preparation.  (Hibah Lee Br. at 6).  The <u>only</u> evidence cited by Hibah Lee for this alleged abuse of the grand jury process is that no indictment has been filed and/or unsealed since the issuance of the grand jury subpoenas.  Such a claim is entirely misplaced and borders on absurdity.  While "it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial," issuing a grand jury subpoena after an indictment is issued is not unusual nor does it lead to the conclusion that such a subpoena was improperly issued.  *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 28 (2d Cir. 1985) (internal quotations and citations omitted).  Here, the sole justification offered by Hibah Lee for a hearing is that because a grand jury subpoena was issued, and no new counts, defendants, or indictments were subsequently filed, then "the sole or dominant purpose behind subpoenaing" the witnesses was to "help the Government prepare for trial."  (Hibah Lee's Br. at 6).  With no support for this allegation, Hibah Lee's barebones allegation is not sufficient to invade the secrecy that is appropriately

-43-

attached to grand jury proceedings.[6]  Therefore, the motion for a hearing should be denied.

## VIII. The Motion to Bifurcate Count Thirty-Five Should Be Denied

### A.    Relevant Facts

On April 2, 2005, NYPD officers recovered a loaded 9 millimeter Ruger semi-automatic pistol from the second floor closet utilized by Delroy Lee at 860 East 225th Street.  The Court is respectfully referred to the Government's post-suppression hearing brief, dated September 29, 2009, for a complete factual background on the circumstances giving rise to the recovery of this gun by the NYPD.  Moreover, as alleged in the Indictment, Delroy Lee was convicted on or about March 14, 2002, in New York State Supreme Court, New York County, of criminal possession of a weapon in the second degree, a Class C felony.  Lee was also convicted on or about November 8, 2001, in New York State Supreme Court, Bronx County, of attempted criminal possession of a controlled substance in the third degree, a Class C felony.  Based on these prior felony convictions, Lee is charged in Count Thirty-Five of the Indictment with being a felon in possession of a firearm.

---

[6] If the Court would find it helpful, the Government will provide an *ex parte* submission addressing the Government's Grand Jury practice in this case.

### B.    Applicable Law

Rule 8(b) of the Federal Rules of Criminal Procedure sets forth the standard then governs when joinder both of offenses and defendants is permitted. *United States* v. *Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988). The Second Circuit has interpreted Rule 8(b) to allow joinder of offenses and defendants where two or more persons' criminal acts are "'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme.'" *United States* v. *Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003) (quoting *United States* v. *Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989)). *See, e.g., United States* v. *Cervone*, 907 F.2d 332 (2d Cir. 1990) (proper joinder of eighteen defendants in a 102-count indictment with a variety of labor racketeering charges, as well as related charges of obstruction of justice, bribery, and making false statements).

Even with proper joinder under Rule 8, Rule 14 of the Federal Rules of Criminal Procedure provides that a district court may nonetheless grant a severance or "provide whatever other relief justice requires" "[i]f it appears that a defendant . . . is prejudiced by a joinder of offenses or of defendants in an indictment . . . or by such joinder for trial together." The Supreme Court has instructed that district courts should only grant a severance under Rule 14 when "there is a serious risk that a joint trial would compromise a specific trial right of one

-45-

of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro* v. *United States*, 506 U.S. 534, 539 (1993). As the Second Circuit has stated, "well-recognized is the proposition that joint trials serve the public interest in economy, convenience, and the prompt trial of the accused." *United States* v. *Turoff*, 853 F.2d at 1039. For this reason, the Supreme Court has instructed that even where the risk of prejudice is high, less drastic measures — such as limiting instructions — often suffice as an alternative to granting a Rule 14 severance motion. *Zafiro* v. *United States*, 506 U.S. at 539; *see also Feyrer*, 333 F.3d at 114.

### D.    Discussion

Delroy Lee seeks bifurcation of Count Thirty-Five because of the potential prejudicial spill-over that would exist if the jury were to hear testimony and evidence about Lee's prior conviction of a felony. Obviously, to convict a defendant of violating Title 18, United States Code, Section 922(g), a jury must find, *inter alia*, that the defendant who possessed the firearm did so after a felony conviction. Although in some cases bifurcation may be necessary to avoid potential prejudicial spillover, here bifurcation is not necessary because the Government intends to introduce the facts underlying the arrests that led to Delroy Lee's convictions of both felonies -- as well as the judgments of conviction themselves -- in the Government's

-46-

case-in-chief as direct evidence of Delroy Lee's participation in the DeKalb Avenue Crew's racketeering enterprise, the robbery conspiracy, and the narcotics conspiracy. For example, on June 1, 2001, Delroy Lee was arrested with co-defendants Hibah Lee and Selbourne Waite with two guns in an SUV in Manhattan. Both Delroy Lee and Waite pleaded guilty to the felony possession of a gun. At trial, the Government will demonstrate that Delroy Lee, Hibah Lee, and Waite were in Manhattan on June 1, 2001 to commit an armed robbery of a drug dealer. Likewise, Delroy Lee's felony guilty plea to selling narcotics in November 2001 is direct evidence of Delroy Lee's participation in the charged narcotics conspiracy.[7]

Therefore, there is no potential for "spill-over" prejudice to Delroy Lee as it relates to Count Thirty-Five because the jury will hear evidence about Lee's prior felony convictions as direct proof of the RICO enterprise and drug and robbery conspiracies. Finally, any prejudice that would otherwise exist when evidence of a prior felony conviction is admitted can be cured with a limiting instruction to the jury as to the reason why the evidence is being admitted. Therefore, Delroy Lee's motion to bifurcate Count 35 should be denied.

---

[7] The Government will submit additional reasoning and arguments about why the prior convictions described above should be admitted in the Government's case in chief when it submits its RICO enterprise letter approximately two weeks prior to trial commencing.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the defendants' motions *in toto* without a hearing.

Dated: New York, New York
      December 22, 2009

                    Respectfully submitted,

                    PREET BHARARA
                    United States Attorney for the
                    Southern District of New York

By: _____
                    Todd Blanche
                    Michael Q. English
                    Margaret Garnett
                    Assistant United States Attorneys
                    Tel.: (212) 637-2494/2594/2520